The Honorable Jim Argue, Jr. State Representative 5905 Forest Place, #210 Little Rock, AR 72207-5245
Dear Representative Argue:
This is in response to your request for an opinion on the following question:
 What is the definition of subscriber information as contained in Ark. Code Ann. 12-10-317 (Michie Supp. 1993), particularly when considered in light of the Arkansas Freedom of Information Act? . . . An extremely narrow interpretation of `subscriber information' would be the name, address, and telephone number of the person whose phone is used to call 911.
 But, it would seem logical that the term would also include the name of the caller. Does it go so far as to include the comments of the caller? And, on the question of the release of an audio tape, does it include the caller's voice since to release the tape unaltered would provide a basis for identifying the caller? Finally, does the term include comments that could be used to identify the caller?
You have also asked whether this definition is limited to a consideration of state law, or must it be answered in light of federal statutory provisions concerning the taping of telephone conversations.
It must be initially noted in responding to these questions that the term "subscriber information" is not defined in the Arkansas Public Safety Communications Act ("the Act," A.C.A. 12-10-301 et seq. (1987 and Cum. Supp. 1993)). This office cannot provide a controlling definition of a term where the General Assembly has elected not to provide one. With regard to your questions concerning the type of information that may logically be included within this term, please note that I have enclosed a copy of Attorney General Opinion 94-100, which addresses the release of information, including "subscriber information," under the Act (A.C.A. 12-10-317 (Cum. Supp. 1993)) and under the Arkansas Freedom of Information Act ("FOIA") (A.C.A. 25-19-101 et seq. (Repl. 1992 and Supp. 1993)). It was concluded therein that the phrase "subscriber information provided in accordance with this subsection" (A.C.A. 12-10-317(a)(2)), may reasonably be construed to refer to the information required under subsection (a)(1) of12-10-317, i.e., the telephone number and street address of any telephone used to place a 911 call. Opinion 94-100 at 3. This information is forwarded to the public safety answering points ("PSAP") by service providers. A.C.A. 12-10-317(a). As also stated in Opinion 94-100, if additional information is forwarded regarding the telephone used to place a 911 call, e.g., the name of the subscriber, this information is probably included in subsection (a)(2) of 12-10-317. Id. It seems that the caller's name would only be included if the caller was also the subscriber. The comments of the caller would not, in my opinion, be included within the term "subscriber information." It is my opinion that the term "subscriber information" is limited to that information which is forwarded to the PSAP by a service provider.
With regard to release of an audio tape, it was concluded in Opinion 94-100 that A.C.A. 12-10-317 does not create an exception to the FOIA in connection with the 911 recordings. Thus, in my opinion, there is no requirement under either the Act or the FOIA that a 911 tape recording be altered in order to remove information that could be used to identify a caller. There is simply no specific basis in the Act for such an exception to the FOIA.
With regard to the possible applicability of federal law in connection with 911 recordings, it should be noted that while there are federal code provisions proscribing, generally, the interception of wire or oral communication (see Omnibus Crime Control and Safe Streets Act of 1968, as amended,18 U.S.C.A. 2510-2520 (1970 and Supp. 1993)), there is an exception for situations in which one party to the conversation is himself the interceptor. See 18 U.S.C.A. 2511 (Supp. 1993). Under18 U.S.C.A. 2511(2)(c) (Supp. 1993), it is not unlawful under that chapter of the Code for a person "acting under color of law" to "intercept a wire, oral, or electronic communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception." See generally United States v. Turk, 526 F.2d 654 (5th Cir. 1976); United States v. King, 587 F.2d 956 (9th Cir. 1978). The recording of 911 calls under the Arkansas Public Safety Communications Act would appear to fall within this exception. It may therefore be concluded that the prohibition under18 U.S.C.A. 2511(1)(c) (Supp. 1993) against disclosure of the contents of an illegally intercepted communication is also inapplicable with respect to 911 recordings.[1]
With regard to federal regulation of so-called "caller ID services," it is my understanding that rule-making proceedings before the Federal Communications Commission are currently underway in CC Docket No. 91-281. Comments are due on May 18, 1994, with respect to the "Report and Order and Further Notice of Proposed Rulemaking" released in that docket on March 29, 1994. I cannot, at this time, speculate as to the ultimate effect of any "caller ID" rules.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elisabeth A. Walker.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh Enclosure
[1] It should perhaps also be noted that the procedure under the 911 provisions whereby telephone numbers and addresses are automatically ascertained (see A.C.A. 12-10-303 (defining "enhanced 911 system") and 12-10-317) do not constitute "interceptions" for purposes of the federal act. See United States v. Seidlitz, 589 F.2d 152, 157 (4th Cir. 1978) (holding that telephone traces which did not entail interference with or observation of the contents of communications were not the sort of "interceptions" proscribed by 18 U.S.C. §§ 2510 -2520).